IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NIKOLAI TANKOVICH, MD, PHD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-1458-RGA |
| | ) | |
| CANDELA CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM ORDER

At Wilmington this **28th** day of **January, 2026**, the court having considered the parties' discovery dispute letter submissions (D.I. 152; D.I. 153; D.I. 154; D.I. 155), IT IS ORDERED that the disputes raised in the pending joint motion for teleconference to resolve discovery dispute, (D.I. 149), are resolved as follows:

**1. Background.** Plaintiff Nikolai Tankovich, MD, PhD ("Plaintiff") filed this patent infringement action on November 4, 2022 alleging infringement of U.S. Patent No. 10,675,481 ("the '481 patent"), which relates generally to a skin resurfacing laser system and method for administering multiple beams of laser energy. (D.I. 1) In early 2018, Plaintiff built a prototype of his invention called the MultiFrax Fractional Laser. (*Id.* at ¶ 3) Plaintiff shared information about his handheld laser skin treatment device with Candela Corporation ("Defendant") under the terms of two non-disclosure agreements (the "NDAs"). (*Id.* at ¶ 6) Plaintiff accuses Defendant of infringing the '481 patent by releasing two laser skin treatment systems called the Frax Pro[1] and the Nordlys (together, the "Accused Products") in 2021. (*Id.* at ¶¶ 22-24)

---

[1] Plaintiff represents that the Frax Pro was renamed the "Nordlys Mini" since this case was filed. (D.I. 153 at 1 n.1)

2. Less than two months after the complaint was filed, Defendant moved to stay the proceedings pending the outcome of *inter partes* review proceedings ("IPR") on the '481 patent before the Patent Trial and Appeal Board ("PTAB"). (D.I. 15) The court denied the motion to stay without prejudice and entered a scheduling order setting a trial date of October 21, 2024. (D.I. 19; D.I. 21)

3. On June 28, 2023, after the PTAB instituted IPR proceedings on the '481 patent, Defendant renewed the motion to stay pending the outcome of the IPR. (D.I. 45) In October of 2023, the court held a *Markman* hearing, issued a claim construction order, and granted the motion to stay the case through the issuance of the PTAB's final written decision. (D.I. 87; D.I. 92; D.I. 95)

4. On June 5, 2024, the PTAB issued a final written decision upholding the validity of the '481 patent and adopting Plaintiff's proposed construction of the term "first pattern and [...] second pattern combine to produce[.]" (D.I. 98, Ex. A at 16) The following month, the court granted Plaintiff's request to lift the stay and entered an amended scheduling order setting a fact discovery deadline of November 29, 2024 and a trial date of December 1, 2025. (D.I. 99; D.I. 102) In the ensuing months, the parties stipulated to amend the scheduling order three times and the trial date was vacated. (D.I. 107; D.I. 108; D.I. 110; D.I. 111; D.I. 116; D.I. 117)

5. On April 7, 2025, Plaintiff moved to stay the proceedings pending resolution of Defendant's Federal Circuit appeal of the PTAB's final written decision. (D.I. 118) The court held oral argument on Plaintiff's motion to stay on May 22, 2025 to explore Plaintiff's change in position on staying the proceedings. (D.I. 133) Counsel indicated that Plaintiff's claim for infringement was no longer supportable based on the PTAB's adoption of Plaintiff's proposed

claim construction. As a result, counsel represented that Plaintiff intends to dismiss this case if Defendant prevails on its appeal before the Federal Circuit. (*Id.* at 3:21-8:21)

    **6.** The court denied Plaintiff's motion to stay, citing the unfair tactical advantage to Plaintiff due to Plaintiff's shifting positions on whether the proceedings should be stayed. (D.I. 133 at 22:2-25) The court also expressly "encourage[d] the parties to think about ways not to run up the costs too much going forward" in recognition of the fact that "there is room for the two sides to actually just negotiate a solution to the litigation in its entirety[.]" (*Id.* at 23:2-11) By way of example, the court suggested postponing expert discovery on damages. (*Id.*)

    **7.** The parties stipulated to amend the scheduling order again in June and September of 2025. (D.I. 135; D.I. 136; D.I. 137; D.I. 138) After granting the final stipulation, the court entered an oral order on September 29, 2025 advising the parties that there would be no further extensions of the schedule. (D.I. 139) Under the current schedule, fact discovery closed on December 19, 2025, opening expert reports are due by March 20, 2026, and case dispositive motions are due on or before July 17, 2026. (D.I. 138) The pretrial conference and trial dates have not been rescheduled. (*Id.*)

    **8.** The parties filed their joint motion for a discovery dispute teleconference on December 19, 2025, the final day of the fact discovery period. (D.I. 149) Both sides seek an additional production of documents and deposition testimony, with a focus on damages discovery. (*See, e.g.*, D.I. 152 at 4 ("[T]he remaining-to-be produced sales and accounting information is clearly relevant to questions of damages."); D.I. 153 at 4 ("Because the sales of the Nordlys and Nordlys Mini are relevant under Rule 26, this Court should grant [Plaintiff's] motion to compel.")).

9. ***Defendant's motion to compel the production of documents is GRANTED-IN-PART.*** Defendant contends that Plaintiff should be compelled to produce documents disclosed for the first time during Plaintiff's deposition on December 5, 2025. (D.I. 152 at 1-2) Following the deposition, Defendant sent Plaintiff a detailed letter describing twenty categories of unproduced documents and cross-referencing each category to specific written discovery requests and excerpts from Plaintiff's deposition transcript. (*Id.*, Ex. 2) Although Plaintiff made three supplemental productions on December 19, December 23, and January 15, Defendant maintains that Plaintiff's document production remains incomplete with respect to eight categories of documents. (*Id.* at 2) But Defendant's opening letter does not affirmatively state whether the eight categories of documents are a subset of the twenty categories identified in its post-deposition letter, nor does Defendant specify where each of the eight categories was discussed in Plaintiff's deposition,[2] where the categories were requested in the written discovery requests or the post-deposition communications, or whether each category was discussed during the meet and confer process.

10. The eight categories identified by Defendant as deficient are: (1) missing sales and accounting data, including monthly and annual reports; (2) royalty reports for sales of products licensed under the '481 patent; (3) license agreements; (4) Plaintiff's agreement with the co-developer of his prototype; (5) third party communications and agreements; (6) Plaintiff's agreements and amendments with his distributors; (7) supplemental 510(k) medical device

---

[2] Defendant includes a three-line string cite of excerpts from the deposition transcript which appear to represent Plaintiff's discussion of the twenty categories of documents originally in dispute. (D.I. 152 at 1) These citations and the accompanying narrative are not limited to the categories currently in dispute, and Defendant does not clarify which of the excerpts are relevant to the instant dispute.

4

clearance papers; and (8) documents from various Dropbox depositories identified in Plaintiff's recent productions. (*Id.*) Below is a chart addressing each of these categories:

| # | CATEGORY | RULING |
|---|---|---|
| 1 | *Sales & accounting data* | GRANTED. In accordance with Plaintiff's agreement to produce his individual sales records, Plaintiff shall produce those records on or before **February 6, 2026**. (D.I. 155 at 2) |
| 2 | *Royalty reports* | DENIED without prejudice. Defendant's December 12, 2025 letter to Plaintiff identifying alleged deficiencies in Plaintiff's document production does not mention royalty reports. (D.I. 152, Ex. 2) There is no evidence on this record that the parties met and conferred on this category. Plaintiff represents that "[n]o such royalty reports exist[.]" (D.I. 155 at 2) |
| 3 | *License agreements* | DENIED without prejudice. Defendant does not identify specific license agreements that were discussed in Plaintiff's deposition but were not produced. (D.I. 152 at 2) Plaintiff represents that he produced documents responsive to this request. (D.I. 155 at 2) |
| 4 | *Co-developer agreement* | DENIED without prejudice. Defendant does not clearly explain the basis for this request or associate it with a particular portion of Plaintiff's deposition testimony. (D.I. 152 at 2) Plaintiff testified that no consultants helped him develop the MultiFrax. (*Id.*, Ex. 1 at 124:9-13) Plaintiff represents that there is no agreement between himself and a co-inventor regarding the MultiFrax prototype. (D.I. 155 at 2) |
| 5 | *Third party agreements & communications* | DENIED without prejudice. Plaintiff represents that he already searched for and produced agreements with third party consultants and communications with Defendant. (D.I. 155 at 2-3) To the extent that Defendant now seeks communications with consultants or potential licensors, Defendant's request was not timely raised with Plaintiff before bringing this dispute. (D.I. 152, Ex. 2) |
| 6 | *Distributor agreements* | DENIED without prejudice. Plaintiff represents that all remaining agreements and amendments with distributors were produced in the productions made on December 19, December 23, and January 15. (D.I. 155 at 3) Defendant does not identify any specific documents that were mentioned in Plaintiff's deposition which remain missing from the post-deposition productions as of the time of Defendant's opening submission. |

5

| 7 | *Supplemental 510(k)s* | DENIED without prejudice. During his deposition, Plaintiff confirmed that supplemental 510(k)s on new indications have not yet been submitted to the Food and Drug Administration. (D.I. 152, Ex. 1 at 217:10-25) |
| 8 | *Dropbox depository documents* | GRANTED. Plaintiff states that "there is no live dispute regarding this category of documents." (D.I. 155 at 3) The only dispute appears to be when the production must be completed. Plaintiff states that "it would take some time to get these produced." Plaintiff shall complete the production on or before **February 6, 2026**. |

**11.** *Defendant's motion to compel Plaintiff to sit for a second deposition is DENIED without prejudice.* As previously discussed, the court issued an oral order on September 29, 2025 informing the parties that there would be no further extensions of the case schedule. (D.I. 139) The parties have been on notice since that date that fact discovery would close on December 19, 2025. (D.I. 138) However, Defendant did not notice Plaintiff's deposition until December 2, 2025, setting a deposition date of December 5, 2025. (D.I. 142) Defendant now moves to compel a second deposition of Plaintiff without articulating the specifics of the requested relief. Defendant's proposed order states that "Plaintiff shall sit for a second deposition," without specifying the anticipated scope, the amount of time requested, or the time frame for completing the deposition without interfering with the remaining deadlines in the scheduling order. (D.I. 152-4)

**12.** In determining whether to permit a second deposition, the court considers: (1) whether the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) whether the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; and (3) whether the proposed discovery is outside the scope permitted by Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C). Defendant generally contends that a second deposition of

6

Plaintiff would be limited to questioning on documents produced after Plaintiff's original deposition. (D.I. 152 at 3-4) However, Defendant does not identify additional topics for deposition based on the late-produced documents, and the case authority cited by Defendant does not support its position that a late production may justify a second deposition based only on its timing.

**13.** In *Goddard Systems, Inc. v. Gondal*, the court permitted a second deposition of a witness because new claims were added to the case following the original deposition of that witness. C.A. No. 17-1003-CJB, 2019 WL 2491691, at *2 (D. Del. June 14, 2019). Here, in contrast, there are no new claims and Defendant does not explain how the late-produced documents change the landscape in a way that requires further deposition testimony. On this record, the court cannot determine whether a second deposition would be unreasonably cumulative or duplicative. In *Cox Communications Inc. v. Sprint Communications Co. L.P.*, the court allowed a witness to be deposed a second time because the plaintiff had not disclosed the full importance of the witness at the time of the original deposition. C.A. No. 12-487-JFB-CJB, 2017 WL 11272852, at *4 (D. Del. Aug. 9, 2017). The same cannot be said of Plaintiff in this case. In sum, the late production of documents by one party does not automatically give the opposing party *carte blanche* to re-depose a witness absent a showing that further questioning would not be unreasonably cumulative or duplicative.

**14.** ***Plaintiff's motion to compel Defendant to produce financial information regarding the Accused Products requested in Interrogatory No. 6 and Request for Production No. 8 and to supplement the response to Interrogatory No. 6 is DENIED without prejudice.*** Plaintiff served Interrogatory No. 6 and Request for Production No. 8 on January 13, 2023 seeking sales, revenue and profit information for sales of the Accused Products. (D.I. 153, Exs.

7

A-B) Although neither party attaches Defendant's responses as an exhibit to the letter submissions, Plaintiff represents that Defendant provided its objections and responses to these discovery requests on February 13, 2023 without objecting to the scope of the definition for "Accused Products." (*Id.* at 2) Defendant contends that it produced responsive financial information on October 2, 2023 focused on Frax 1550 and Frax 1940 handpieces, which are the allegedly infringing components of the Nordlys and Nordlys Mini systems.[3] (D.I. 154 at 1-2)

15. Plaintiff did not object to the sufficiency of Defendant's production for more than two years. The evidence of record supports Defendant's position that Plaintiff knew Defendant's financial document production was limited to the Frax 1550 and Frax 1940 handpieces, as opposed to the Nordlys and Nordlys Mini systems as a whole. For example, on October 10, 2025, Plaintiff argued that, "[w]hile [Defendant] has produced a document summarizing he revenue and sales data for the Frax 1550 and Frax 1940, [Defendant] has failed to produce the underlying invoices or purchase orders for these sales." (D.I. 154, Ex. 5 at 3) And on November 19, 2025, Plaintiff asked Defendant to "provide updated financials for the Frax 1550 and Frax 1940" because the information produced in response to the interrogatory "only includes information up through 2023." (*Id.*, Ex. 7) These communications confirm that Plaintiff understood Defendant's production of financial information was limited to the Frax 1550 and Frax 1940 handpieces. Plaintiff's argument that he did not know Defendant was withholding sales information on the Nordlys and Nordlys Mini until Defendant served objections to Plaintiff's 30(b)(6) topics is not persuasive.[4] (D.I. 153 at 1)

---

[3] There is no dispute that the Frax 1550 and Frax 1940 handpieces are the components of the Nordlys and the Nordlys Mini alleged to practice the '481 patent. (D.I. 153 at 3)
[4] Neither side attached Defendant's objections to Plaintiff's 30(b)(6) notice of deposition.

16. It is well-established that a patent damages model should generally be based on the smallest salable patent-practicing unit. *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) ("Where small elements of multi-component products are accused of infringement, calculating a royalty on the entire product carries a considerable risk that the patentee will be improperly compensated for non-infringing components of that product. Thus, it is generally required that royalties be based not on the entire product, but instead on the 'smallest salable patent-practicing unit.' "). Testimony from Defendant's 30(b)(6) witness confirms that the Frax 1550 and Frax 1940 handpieces are purchased separately from the Nordlys and Nordlys Mini systems. (D.I. 154, Ex. 3 at 53:12-15, 55:7-11) Plaintiff's two-year delay in objecting to Defendant's circumscribed production suggests that Plaintiff did not prioritize financial discovery beyond the scope of the Frax 1550 and Frax 1940 handpieces. The court is also mindful of the September 29, 2025 Oral Order advising the parties that there will be no further extensions of the scheduling order. For these reasons, Plaintiff's motion to compel is DENIED without prejudice.

17. ***Plaintiffs' motion to compel Defendant to produce a Rule 30(b)(6) designee on Defendant's sales, revenues, and gross profits for the Accused Products and in response to Topics 14, 30, 32, 33, and 34 of the 30(b)(6) notice is DENIED without prejudice.*** For the same reasons set forth at paragraphs 14 to 16, *supra*, Plaintiff's motion to compel 30(b)(6) deposition testimony on sales, revenue, and profit information for the Nordlys and Nordlys Mini is DENIED without prejudice.

18. **Conclusion.** For the foregoing reasons, IT IS ORDERED that:

    a. Defendant's motion to compel the production of documents is GRANTED-IN-PART. The motion is GRANTED with respect to the production of

individual sales data and the production of documents from Dropbox depositories. Plaintiff shall produce these documents on or before **February 6, 2026.** The motion is DENIED without prejudice in all other respects.

b. Defendant's motion to compel Plaintiff to sit for a second deposition is DENIED without prejudice.

c. Plaintiff's motion to compel Defendant to produce financial information regarding the Accused Products requested in Interrogatory No. 6 and Request for Production No. 8 and to supplement the response to Interrogatory No. 6 is DENIED without prejudice.

d. Plaintiffs' motion to compel Defendant to produce a Rule 30(b)(6) designee on Defendant's sales, revenues, and gross profits for the Accused Products and in response to Topics 14, 30, 32, 33, and 34 of the 30(b)(6) notice is DENIED without prejudice.

IT IS FURTHER ORDERED that the discovery dispute teleconference set for January 29, 2026 at 11:00 a.m. is CANCELLED.

19. Given that the court has relied upon material that technically remains under seal, the court is releasing this Memorandum Order under seal, pending review by the parties. In the unlikely event that the parties believe that certain material in this Memorandum Order should be redacted, the parties shall jointly submit a proposed redacted version by no later than **February 4, 2026,** for review by the court, along with a motion supported by a declaration that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting

*Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted)). If the parties do not file a proposed redacted version and corresponding motion, or if the court determines the motion lacks a meritorious basis, the documents will be unsealed within fourteen (14) days of the date the Memorandum Order issued.

**20.** This Memorandum Order is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Order. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to four (4) pages each.

**21.** The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, www.ded.uscourts.gov.

Sherry R. Fallon
United States Magistrate Judge